IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DWAYNE T. MYERS                                                                                             PLAINTIFF

        v.                           Civil No. 12-2323

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Dwayne T. Myers brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background**

Plaintiff applied for SSI and DIB on July 28, 2010. (Tr.) Plaintiff alleged an onset date of June 17, 2010 based on a heart attack and triple bypass surgery. (Tr. 12, 160.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on November 22, 2011. (Tr. 26.) Plaintiff was present to testify and was represented by counsel. (Tr. 26.) The ALJ also heard testimony from Vocational Expert ("VE") John Massey. (Tr. 26.)

At the time of the administrative hearing, Plaintiff was 50 years old, and possessed a ninth-grade education. (Tr. 160.) The Plaintiff had past relevant work experience ("PRW") as a tractor trailer truck driver, forklift operator and production assembly work. (Tr. 49-51.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On December 12, 2012, the ALJ concluded that the Plaintiff suffered from the following severe impairments: coronary artery disease status post bypass surgery, peripheral neuropathy, obesity, generalized anxiety disorder, and depressive disorder. (Tr. 14.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work, "except that he can perform simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes. He can tolerate no more than incidental contact with co-workers, supervisors and the general public. (Tr. 15.)With the assistance of the VE, the ALJ determined that the Plaintiff could perform his past relevant work in light production assembly. (Tr. 19.)

Plaintiff requested a review by the Appeals Council on December 21, 2011. (Tr. 6.)The Appeals Council denied the appeal on November 1, 2012. (Tr. 1.)

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion**

Plaintiff raises four issues on appeal: 1) The ALJ erred in the weight assigned to treating physician Dr. Niba's medical source statement; 2) the ALJ erred in his Step Four analysis; 3) the ALJ erred in his credibility analysis; and 4) the ALJ erred in his assignment of overall RFC. (Pl.'s Br. 9-16.) Because this Court finds that the ALJ erred on the credibility analysis and assignment of overall RFC, issues one and two will not be addressed.

A.  **Credibility Analysis**

Plaintiff argues that the ALJ did not perform a proper *Polaski* analysis in evaluating his credibility. (Pl.'s Br. 12.)

A proper *Polaski* analysis requires the ALJ to conduct an express examination of the dosage, effectiveness, and side effects of all medication. *Polaski*, 739 F. 2d at 1322. Failure to include medication side effects in the hypothetical to the VE, "at a minimum," requires the case to be remanded. *Mitchell v. Sullivan*, 925 F.2d 247, 250 (8th Cir. 1991).

The ALJ did not consider the side effects of Plaintiff's medications, either alone, cumulatively, or synergistically. Nor did he include medication side effects in any hypothetical to the VE. Plaintiff testified that he experienced dizziness and memory loss as a result of his medications. (Tr. 30.) He complained of dizziness on at least one disability form and to his doctors. (Tr. 180, 631, 635.) He presented at the emergency room due to dizziness and blackouts. (Tr. 655.) He testified that he was taking Metoprolol,[2] Simvastatin,[3] Xanax,[4] Gabapentin[5] and "one other for depression." (Tr. 33.) Upon

---

[2]Metoprolol is selective beta1-blocker indicated for use in hemodynamically stable patients with definite or suspected acute myocardial infarction and forangina. Side effects include tiredness, dizziness, and depression. http://www.pdr.net/drug-summary/metoprolol-tartrate?druglabelid=3114 (last accessed Feb 4, 2014.)

[3]Simvastatin is an HMG-CoA reductase inhibitor indicated to use in reduce blood lipids in cardiac patients. Side effects include abdominal pain, headache, myalgia, constipation, nausea, atrial fibrillation, gastritis, diabetes mellitus, insomnia, vertigo, bronchitis, eczema, upper respiratory infections, urinary tract infections. http://www.pdr.net/drug-summary/zocor?druglabelid=402&id=858 (last accessed Feb. 4, 2014).

[4]Xanax is a benzodiazepine used to treat anxiety and panic disorders. Side effects include drowsiness, lightheadedness, depression, headache, confusion, and insomnia. http://www.pdr.net/drug-summary/xanax?druglabelid=1873&id=1159 (last accessed Feb. 4, 2014).

[5]Gabapentin is a GABA analog used to treat seizures and post-herpetic neuralgia. Side effects include dizziness, somnolence, fatigue, peripheral edema, hostility, diarrhea, asthenia, infection, dry mouth, nystagmus, constipation, N/V, headache, ataxia, and fever.http://www.pdr.net/drug-summary/neurontin?druglabelid=2477 (last accessed Feb. 4, 2014).

AO72A
(Rev. 8/82)

questioning by his attorney, he testified that he was taking Cymbalta.[6] (Tr. 36.) Every one of these drugs can produce dizziness or lightheadedness as a side effect.

The ALJ also inserted his own opinion of the proper physical rehabilitation of a cardiac patient into his credibility analysis. *See Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990) ("the ALJ must not substitute his opinions for those of the physician"). Specifically, the ALJ stated that "the undersigned finds that the claimant has done little to improve his condition. Although he stated that he could walk across the parking lot, he has made no apparent attempts to try to improve upon these abilities." (Tr. 19.) The ALJ also seemed concerned that the Plaintiff filed for disability shortly after his bypass surgery, making the following statement at the hearing:

> "I'm just, I'm not convinced you gave yourself enough, you tried to, tried to help yourself get better. That's where I'm having trouble with your case. . .  I mean, I know you're supposed to try to do a little more and it sounds like you've never even done more than walk to the mail box."

(Tr. 46.) In response, Plaintiff testified that there was some disagreement between his doctors as to what physical activity was advisable for him. (Tr. 46-47.)  Other than his failure to quit smoking, which the ALJ did not note in his credibility analysis, no doctor has labeled Plaintiff as noncompliant with prescribed treatment. Nor can this Court find any document in the medical record laying out a suggested course of physical exercise for the Plaintiff.

It may well be the case that the Plaintiff ought to be doing more physical activity to rehabilitate himself after his surgery. However, without any support in the objective medical record to that effect, it is error for the ALJ to presume to prescribe physical activity and then hold the lack of it against the Plaintiff in the credibility analysis.

---

[6]Cymbalta is a Serotonin and norepinephrine reuptake inhibitor indicated for treatment of major depressive disorder (MDD) and generalized anxiety disorder (GAD) and management of neuropathic pain associated with diabetic peripheral neuropathy (DPNP). Side effects include Nausea, dry mouth, constipation, diarrhea, decreased appetite, fatigue, dizziness, somnolence, hyperhidrosis, headache, insomnia, abdominal pain. http://www.pdr.net/drug-summary/cymbalta?druglabelid=288&id=2223 (last accessed Feb. 4, 2104.)

AO72A
(Rev. 8/82)

On remand the ALJ is directed to determine what drugs Plaintiff is currently taking, and to expressly consider the side effects of those medications. That consideration must include any cumulative or synergistic effects that might result from taking the drugs in combination. The ALJ is then directed to include those side effects in hypothetical to the VE.

**B.      Overall RFC Assessment**

Plaintiff argues that the ALJ did not fully explore Plaintiff's symptoms and did not incorporate medical evidence from treating and consulting physicians in assigning an overall RFC. (Pl.'s Br. 18-19.)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC "must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citing *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002.)

In this case, there is no physical function report by an acceptable medical source that analyzes the effect of Plaintiff's peripheral neuropathy on his ability to function in the workplace. Plaintiff's severe impairment of peripheral neuropathy[7] was not included in his Physical RFC Form diagnosis. (Tr. 493.) Plaintiff testified that his legs ache and "from my hips down my feet feel like they're on fire all the time." (Tr. 37.) Plaintiff has complained of to his doctors, including a neurologist. (Tr. 522.) The ALJ included peripheral neuropathy in his list of severe impairments. (Tr. 596, 631, 633.) However, the Physical RFC Form did not include peripheral neuropathy in the Plaintiff's diagnosis, and, therefore did not consider it when assessing the Physical RFC. The ALJ declined to give significant weight to

---

[7]Peripheral neuropathy is dysfunction of one or more peripheral nerves (the part of a nerve distal to the root and plexus). It includes numerous syndromes characterized by varying degrees of sensory disturbances, pain, muscle weakness and atrophy, diminished deep tendon reflexes, and vasomotor symptoms, alone or in any combination. The pathophysiology can be axonal or dymelinating in nature.
http://www.merckmanuals.com/professional/neurologic_disorders/peripheral_nervous_system_and_motor_unit_disorders/peripheral_neuropathy.html?qt=peripheral%20neuropathy%20+&alt=sh (last accessed Feb. 5, 2014.)

Plaintiff's treating physician Dr. Niba's function report. (Tr. 18.) There are no other physical function reports in the record.

Additionally, the ALJ does not appear to have included dizziness or syncope in his evaluation of the Plaintiff's overall RFC or given a reason for why it was not included. As discussed above in the credibility analysis section, Plaintiff has complained of dizziness and blackouts, and takes a number of drugs that can result in dizziness. His treating physician has noted syncope[8] in his medical records and a neurologist included syncope in her impression for Plaintiff. (Tr. 386, 388, 400, 522.) Yet the Physical RFC Form did not include dizziness or syncope in the Plaintiff's diagnosis. Nor did the ALJ's overall RFC include any postural or environmental limitations that might be expected for dizziness or syncope, such as avoidance of climbing or heights.

On remand, the ALJ is directed to recontact Plaintiff's consulting neurologist Dr. Tremwel for a function report concerning Plaintiff's peripheral neuropathy. The ALJ is also directed to recontact Plaintiff's treating cardiologist Dr. Adjei for a function report concerning Plaintiff' syncope/dizziness.

## IV.     Conclusion

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

---

[8]Syncope is a sudden, brief loss of consciousness (LOC) with loss of postural tone followed by spontaneous revival.
http://www.merckmanuals.com/professional/cardiovascular_disorders/symptoms_of_cardiovascular_disorders/syncope.html?qt=syncope&alt=sh (last accessed Feb. 5, 2014.)

DATED this 6th day of February 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)